IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUDITH LEAVELL and GABRIEL BROWN, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 20 C 6908 ) |
| FINANCIAL RECOVERY SERVICES, INC., | ) Judge Joan H. Lefkow ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

In their second amended complaint, Judith Leavell and Gabriel Brown raised several violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq.*, against Financial Recovery Services, Inc. (FRS).[1] Leavell voluntarily dismissed all of her claims. FRS moves for summary judgment under Federal Rule of Civil Procedure 56 on all of Brown's claims. In response to the motion, Brown concedes that the alleged violations of §§ 1692b(3), 1692c(b), and 1692e of the FDCPA should be dismissed. Those claims are therefore dismissed with prejudice under Rule 41(b), leaving claims under §§ 1692d, 1692d(5), and 1692d(6) of the FDCPA. For the following reasons, the motion is granted.

**BACKGROUND**

When considering whether a party is entitled to judgment as a matter of law under Rule 56(a), the court relies on the material factual assertions presented by the parties, subject to any disputes over those facts. *See* Fed. R. Civ. P. 56(a); LR 56.1. The facts in this case are largely

---

[1] Jurisdiction rests under 28 U.S.C. § 1331, and venue is proper under 28 U.S.C. § 1391(b)(2).

1

undisputed and no material fact is in dispute. What follows is a statement of those facts with resolution of any disputes as to whether a fact is undisputed.

## I. FRS's procedures for wrong numbers

FRS is a debt collection company. (Dkt. 8 at 3, ¶5.) It has procedures for employees, or "collectors," to follow when they discover that a bad or wrong number is associated with an account. (Dkt. 41 ¶¶15, 17.) FRS's "Specialty Account Procedures" informs FRS employees that a third party may request that FRS cease calling a number, and it instructs collectors on how to handle such a request. (*Id.* ¶16.) The Specialty Account Procedures also directs FRS collectors to its "Handling Bad/Wrong Phone Numbers Procedure" (Wrong Number Procedure). *Id.* Specialty Account Procedures also states that "Data-Processing will return the account to [the] client using the appropriate codes to notify them of the cease and desist." (Dkt. 34-6 at 3.)

The Wrong Number Procedure is designed to "return[ ] information to [FRS] clients that allows them to update their records by removing bad or wrong phone numbers while complying with consumer or third party request[s] to not be contacted at a certain phone number." (Dkt. 41 ¶17.) Per that policy, if FRS learns that the phone number is wrong, in that it is no longer a valid number to reach the intended debtor, the employee must document that information in the account and remove the number with codes "RA" and "WP," followed by the phone number and code for the number type (*e.g.*, "C" for cell, "H" for home). (*Id.*) The Wrong Number Procedure further provides that the FRS collector who discovers a bad or wrong number must notify a Production Manager of the issue, who then emails Data Processing. (Dkt. 34-7 at 2.) Data Processing then reports the information back to the client per the client's specific instructions. (*Id.*)

II. **The calls between FRS and the 3906 number**

Leavell incurred debt on her Discover Bank account. (Dkt. 41 ¶1.) Discover Bank placed the account with FRS for collection on April 6, 2020. (*Id.* ¶2.) The telephone number provided to FRS with the account was xxx-xxx-3906 (the 3906 number). (*Id.* ¶3.) That number, however, was Brown's. (Dkt. 40 at 14.) Brown is Leavell's daughter. (Dkt. 35-3 at 2, 5.) Leavell suffers from extreme aphasia and Brown, along with her brother, care for her and have been assigned medical power of attorney and financial power of attorney. (Dkt. 40 at 14; dkt. 35-2 at 6–7.)

Between April 6 and April 20, 2020, FRS placed ten calls to the 3906 number. (Dkt. 41 ¶4.) FRS did not speak with anybody during those calls and did not leave any voicemail messages. (*Id.*) On April 20, 2020, however, FRS received a phone call originating from the 3906 number:

> **FRS:** This is Dan Jambor on a recorded line. How can I help you?
> **Caller:** Hi, who is this?
> **FRS:** This is Dan Jambor at FRS. Who am I speaking with?
> **Caller:** Sara Valentine.[2]
> **FRS:** How can I help you Sara?
> **Caller:** You guys keep calling this number like every morning. What company is this for?
> **FRS:** Again it's FRS. What's the number we called? I'll see who they were trying to reach.
> **Caller:** ***-***-3906.
> **FRS:** Okay. Yup I find that. The person who called that was told to try to reach Judith. Is Judith there?
> **Caller:** Uhm, no. No.
> **FRS:** Okay. When would she be in?
> **Caller:** I don't … this isn't her number. A lot of people call for her.
> **FRS:** Oh it's a wrong number.
> **Caller:** Yes.
> **FRS:** Okay. I'll note down it's a wrong number and get it corrected. Thank you.
> **Caller:** All right. Thank you.

---

[2] It was actually Brown. (*Id.* ¶34.)

(*Id.* ¶5.) Thereafter, FRS marked the file as "RA/WP ******3906 C," indicating, per the Wrong Number Procedure, that the 3906 number was assigned to a wrong party and it was a cell phone. (*Id.* ¶¶6, 18.) Discover Bank recalled the Leavell account on October 2, 2020. (*Id.* ¶7.) There is no evidence showing what information Discover Bank received from FRS when it recalled the account.

On October 5, 2020, Discover Bank again placed the Leavell account with FRS for collection and the 3906 number was still associated with the account. (*Id.* ¶8.) Brown asserts that based on FRS's phone call logs, the wrong number designation from the last time the account was placed with FRS was apparent in the account notes. (Dkt. 40 at 16.) Those logs show all of the calls made to and from the 3906 number and include other data about the call, such as the FRS collector who made the call and the result of the call. (*Id.*) But according to FRS, the phone call logs are not account notes. (*See* dkt. 43 at 2, ¶5.) That assertion is supported by the record. The record contains documents titled "FACT SHEET" where FRS collectors entered account notes. (*Id.* ¶6.) There are two FACT SHEETs in the record: one for the first time Discover Bank sent the file to FRS on April 6, 2020, and one for the resubmission on October 5, 2020. (*See* dkts. 34-1, 34-3.)

On October 8, 2020, FRS called the 3906 number for the first time since its resubmission to FRS:

> **Called Party:** Hello?
> **FRS:** Hello. This is Noel Johnson. Please be advised this call will be recorded for quality and [*sic*] assurance training and compliance purposes. May I speak with Judith Leavell?
> **Called Party:** You have the wrong number.
> **FRS:** I'm sorry. Did you say wrong number? And again I only heard number. My phone must have cut out. I'm trying to reach Judith Leavell. My name is Noel Johnson. Is this a good phone number for Judith Leavell?

4

(Dkt. 41 ¶9.) Following the call, the FRS collector entered notes indicating that he only heard "number" and was not sure what the consumer had said and tried to follow up (*id.* ¶22): "RDG I ONLY HEAR NUMBER   NOTE SURE WHAT   TRIED TO FU" (dkt. 34-3 at 2).

Brown disputes that the FRS collector did not hear her say "wrong number." But she produces no evidence, nor does she identify any evidence that supports a reasonable inference, that the collector in fact heard her say "wrong number" yet ignored it. The only reasonable inference to draw from the record is that the FRS collector did not hear Brown say "wrong number." The recording of the call and the collector's notes support that conclusion. (Dkt. 36.) Further, unlike other recordings in the record, the October 8, 2020 call recording has noticeable distortion in audio quality. (In this conclusion, the court does not rely on the hearsay or speculation in FRS's supporting declaration from Brian Bowers about what the FRS collector did or did not hear. (*See* dkt. 34 at 3, ¶11.))

FRS made four more calls to the 3906 number. (*See* dkt. 33 ¶11; dkt. 40 at 16.) The fourth and final call, made on October 27, 2020, was answered:

> **Called Party:** Hello?
> **FRS:** Hi. Judith Leavell?
> **Called Party:** You have the wrong number. Why do you guys keep calling this phone?
> **FRS:** I'm on a recorded line. I didn't know it was a wrong number until just now.
> **Called Party:** Okay. Stop calling this phone.
> **FRS:** Bye.

(Dkt. 41 ¶12.) The FRS collector noted that the 3906 number was a "WRNG NUM" in the account notes, coded the number with "RA/WP *******3906 C," and no further calls were made to the 3906 number. (*Id.* ¶¶13, 23.)

5

Whenever Brown received calls from FRS, its phone number appeared on her caller identification system, but not its name. (Dkt. 40 at 18.) Brown asserts that, had FRS's name appeared on her caller identification system, she would have blocked those calls. (*Id.*)

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must show that there is no genuine dispute of fact preventing the entry of judgment in its favor as a matter of law. *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). The court views all facts in the light most favorable to the nonmovant and draws all reasonable inferences in her favor. *See Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But the non-movant must do more than raise "some metaphysical doubt as to the material facts." *Id.* at 586. Rather, she "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). To create a genuine dispute, the evidence must be "such that a reasonable jury could return a verdict for the [non-movant]." *Id.* at 248.

## ANALYSIS

FRS moves for summary judgment on the basis that there is not sufficient evidence on which a reasonable jury could find for Brown on her FDCPA claims and, alternatively, argues that it is entitled to the *bona fide* error defense under § 1692k(c) of the FDCPA. As explained below, the evidence is such that no reasonable jury could conclude that FRS violated the FDCPA, and so reliance on the *bona fide* error defense is not necessary.

I. **The FDCPA**

Brown proceeds on alleged violations of §§ 1692d, 1692d(5), and 1692d(6) of the FDCPA. Section 1692d prohibits a debt collector from "engag[ing] in any conduct the natural

6

consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Section 1692d is broadly drafted and whether conduct harasses, oppresses, or abuses is ordinarily a question for the jury, but Congress left courts to define the scope of § 1692d, allowing alleged violations to be decided on summary judgment. *See Ross* v. *Fin. Asset Mgmt. Sys., Inc.*, No. 21 C 00647, 2022 WL 444146, at *6 (N.D. Ill. Feb. 14, 2022).

Although § 1692d is stated in broad terms, the boundary of its generally proscribed conduct is informed by six subparts. *E.g.*, *Scott* v. *Nationwide Credit, Inc.*, No. 20 C 01670, 2021 WL 166711, at *3 (S.D. Ind. Jan. 19, 2021); *Finch* v. *Slochowsky & Slochowsky, LLP*, No. 19 C 6273, 2020 WL 5848616, at *3 (E.D.N.Y. Sept. 30, 2020) (invoking *noscitur a sociis*—statutory words often known by the company they keep—to define bounds of § 1692d). The subparts relevant here are (5) and (6):

> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
>
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d(5)–(6).

When it comes to violations based on "clerical or factual mistakes," § 1692k(c) provides a *bona fide* error defense. *Jerman* v. *Carlisle*, 559 U.S. 573, 587 (2010). A debt collector is not liable for an FDCPA violation if "(1) the violation was not intentional, (2) the violation resulted from a *bona fide* error, and (3) it maintained procedures reasonably adapted to avoid the error." *Ewing* v. *MED-1 Sols., LLC*, 24 F.4th 1146, 1154 (7th Cir. 2022). Those procedures adopted need not be foolproof, just reasonably aimed at preventing the actual error that occurred. *See Kort* v. *Diversified Collection Servs., Inc.*, 394 F.3d 530, 538–39 (7th Cir. 2005).

## II. Section 1692d(5) claim

Concerning the alleged § 1692d(5) violation, FRS argues that based on the entire series of events there is not sufficient evidence to show an intent to annoy, abuse, or harass. Brown submits that there is sufficient evidence based on the fact that she "'informed [FRS] that it ha[d] the wrong number, and [FRS] nevertheless continued to call'" her. (Dkt. 40 at 4 (quoting *Hayes v. Receivables Performance*, No. 17 C 1239, 2018 WL 4616309, at *5 (N.D. Ill. Sept. 26, 2018)).)

The full context, based on the undisputed facts, describes a series of events that is not as simple as Brown's characterization that FRS simply kept calling after cease-call requests. There are potentially two instances where Brown informed FRS that it had the wrong number and calls were made after. The first time was on April 20, 2020. FRS properly documented that it was a wrong number and calls ceased for a few months. Some unspecified error occurred, causing the 3906 number to remain associated with the Leavell account when Discover Bank resubmitted the account to FRS. Accordingly, calls resumed on October 8, 2020. Evidently, resubmitted accounts are not treated as a continuation of a previously existing account with all history from that account. Rather, resubmitted accounts receive a new record that does not reflect the prior history of the phone number or debtor. Phone call logs, which FRS produced in discovery, do show the entire history of calls to a phone number. There is no evidence, however, that the collector who called on October 8, 2020, knew that he was calling a wrong number or had access to the phone call logs, which would otherwise allow the inference that he knew it was a wrong number.

The transcript of the October 8 call records the collector saying that he did not hear Brown completely. The recording reveals sporadic connectivity problems and degraded audio quality on the collector's line. The collector's account notes state that he only heard Brown say

8

"number." In addition, account notes of the subsequent October 27, 2020 call and transcript show that the collector stated that he "didn't know it was a wrong number until just now."

Looking at the full context based on the undisputed facts, there is no evidence supporting a reasonable inference that any calls were made with the intent to annoy, abuse, or harass the recipient. Inferring so is speculation. No other behavior supports an intent to annoy, abuse or harass: FRS collectors were not excessive, rude, or abusive, and call transcripts show that they never got past introductions; FRS never called more than once per day, a total of 15 calls over a two-month period; and only two calls were actually answered, as well as one call-back from Brown. The court determines, therefore, that no reasonable jury could conclude that FRS violated § 1692d(5).

**III. Section 1692d(6) claim**

On the alleged § 1692d(6) violation, Brown contends that a debt collector fails to provide "meaningful disclosure" of its identity, as required under this subsection, if it reaches a voicemail but fails to leave a message. Under the plain language of § 1692d(6), she argues, there is no qualification that disclosure be made only when leaving a voicemail or when the call is answered. Brown cites *Langdon* v. *Credit Management, LP*, No. 09 C 3286, 2010 WL 3341860 (N.D. Cal. Feb. 24, 2010), and *Sussman* v. *I.C. System Inc.*, 928 F. Supp. 2d 784 (S.D.N.Y. 2013), in support. Both cases involve decisions on the plausibility of alleged claims on Rule 12(b)(6) motions and they cite "common sense" as rationale. In *Langdon*, the court determined that the plaintiff plausibly stated a claim where he alleged that the debt collector hung up the phone when plaintiff or his answering machine answered. No. 09 C 3286, 2010 WL 3341860, at *2. And in *Sussman*, the court, citing *Langdon*, similarly determined that the plaintiff stated a plausible claim where she alleged that the debt collector hung up either prior to or as soon as she, members of her household, or her voicemail answered the call. *Sussman*, 928 F. Supp. 2d at 794.

9

At least one court in this district has rejected Brown's position. In *Johnson* v. *Ditech Fin., LLC*, the court determined on summary judgment that a debt collector who made ninety-nine unanswered calls and failed to leave a voicemail did not violate § 1692d(6) because the "failure to leave a voicemail, absent more, is not the type of harassing conduct contemplated by the statute." No. 15 C 996, 2017 WL 3642061, at *3 (N.D. Ill. Aug. 24, 2017). The apparent seminal decision on that issue, cited in *Johnson*, was *Udell* v. *Kan. Couns., Inc.*, 313 F. Supp. 2d 1135 (D. Kan. 2004). There, the court viewed § 1692d(6) "in conjunction with the entirety of § 1692d" and determined that "not leaving a message is not the type of harassing, oppressive, or abusive conduct that violates" the FDCPA. *Id.* at 1143. As further support, in a magistrate judge's recommended disposition under Rule 72(b), in *Kuberski* v. *Cred X Debt Recovery, LLC*, the court found *Udell* more persuasive than *Langdon*, and found significant the fact that the debt collector took no steps to hide its number or identity on caller identification systems. *See* No. 11 C 3247, 2012 WL 2943726, at *9–*10 (D. Colo. July 2, 2012).

*Johnson* and *Udell* rest on a more persuasive interpretation of § 1692d(6). Section 1692d(6), as a subsection of a broader provision, must be read as a narrower example of harassment and abuse. *See Beach* v. *LVNV Funding LLC*, No. 12 C 778, 2013 WL 1878940, at *3 (E.D. Wis. May 3, 2013). Under that view, there is nothing inherently "harassing, oppressive, or abusive about" not leaving a voicemail, especially where the call volume and pattern are not excessive. *Udell*, 313 F. Supp. 2d at 1143.

Here, although FRS's name did not appear on Brown's caller identification system, its correct number showed up. When Brown called the number, FRS answered and responded to her cease-call request. No evidence suggests that FRS took steps to conceal its identity. *See Kuberski*, No. 11 C 3247, 2012 WL 2943726, at *10; *Udell*, 313 F. Supp. 2d at 1444 n.6. In

10

accordance with *Johnson* and *Udell*, FRS's failure to leave a voicemail, by itself, does not violate the duty imposed by § 1692d(6) to provide meaningful disclosure of its identity.

## IV. Section 1692d claim

Last, if one assumes that the same conduct supporting the § 1692d(5) claim can alternatively support a § 1692d claim,[3] the question is whether there is sufficient evidence for a reasonable jury to conclude that FRS's conduct would naturally harass, oppress, or abuse a person. There is a deep well of § 1692d cases to draw from where "courts consider a multitude of factors including the volume, frequency, and persistence of calls, to whether defendant continued to call after plaintiff requested it cease, and to whether plaintiff actually owed the alleged debt." *Shannon* v. *State Collection Serv., Inc.*, No. 19 C 983, 2021 WL 495150, at *4–*5 (W.D. Wis. Feb. 10, 2021) (cleaned up) (parties cited multiple cases with varying call volumes, patterns, and other conduct); *see also Schumacher* v. *Credit Prot. Ass'n*, No. 13 C 164, 2015 WL 5786139, at *9–*10 (S.D. Ind. Sept. 30, 2015) (identifying 15 example cases submitted by the parties).

But the parties offer little guidance on how § 1692d's open-ended language applies to the facts at hand or how other courts have assessed similar facts. And despite the favorable standard for the non-movant, Brown's narrative of the claim (dkt. 40 at 6) does not qualify as a developed argument, for it is vague, not persuasive, and lacks citation to authority and the record.

Here, the undisputed facts show that FRS engaged in basic debt collection practices with the exception of two errors, and only one error (calling Brown on October 8, 2020) was arguably FRS's fault. As explained in the § 1692d(5) discussion, nothing about the volume, pattern, or

---

[3] Some courts have stated that where the alleged harassing conduct occurred via telephone, the claim implicates § 1692d(5) only, not § 1692d, and some other conduct is required to support a separate § 1692d violation. *See Hendricks* v. *CBE Grp., Inc.*, 891 F. Supp. 2d 892, 896 n.2 (N.D. Ill. 2012); *Wright* v. *Enhanced Recovery Co., LLC*, 227 F. Supp. 3d 1207, 1213 n.27 (D. Kan. 2016). The reasoning for that conclusion is persuasive, but resolution of the issue here is unnecessary because even assuming the same conduct can support violations of both, it does not amount to a violation of either.

11

content of the calls suggests that this was the type of interaction that would have the natural consequences of harassment, oppression, or abuse. Nor does the conduct here come close to various examples of violative conduct described in *Shannon* or *Schumacher*, cited above. Therefore, even if Brown had fully developed an argument on this claim, the evidence is such that no reasonable jury could conclude that FRS violated § 1692d.

**V.      The *bona fide* error defense**

Given the outcome on the merits, FRS does not need to rely on the *bona fide* error defense. Nor is its applicability here clear. The evidence does not show the exact error that caused the 3906 number to continue to be associated with the Leavell account when it was resubmitted to FRS. It is possible that FRS followed its procedures to a T, but Discover Bank resubmitted the Leavell account to FRS with the 3906 number and FRS proceeded on that information. FRS identifies no procedure to catch this error where clients resubmit accounts with numbers that were previously determined to be wrong. *See Ewing*, 24 F.4th at 1154.

## CONCLUSION AND ORDER

Financial Recovery Services, Inc.'s motion for summary judgment (dkt. 31) is granted. The clerk is directed to enter judgment for Financial Recovery Services, Inc. Case terminated.

Date: May 24, 2022

_____
U.S. District Judge Joan H. Lefkow